IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISANNE WALDBRUNN,
    Plaintiff,

v.                                   Case No. 3:10cv273/MCR/CJK

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Northern District of Florida Local Rules 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. The case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's application for Social Security Disability benefits under Title II of the Act, 42 U.S.C. §§ 401 *et seq*. Upon review of the record before this court, the undersigned concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner therefore should be affirmed.

## PROCEDURAL HISTORY

Plaintiff Chrisanne Waldbrunn[1] filed an application for a period of disability and disability insurance benefits, under 42 U.S.C. §§ 401 *et seq.*, alleging an onset of disability beginning December 21, 2007.  She filed a request for hearing before an Administrative Law Judge (ALJ), and the hearing took place on September 12, 2008.  The ALJ issued his unfavorable decision on October 28, 2008.  On May 28, 2010, the Appeals Council declined to review the ALJ decision, which then became the final decision of the defendant, Commissioner of Social Security.

## FINDINGS OF THE ALJ

Pertinent to the issue raised in this action, the Administrative Law Judge determined that plaintiff has the following severe impairments, *see* 20 CFR § 404.1520(c):  lumbar facet syndrome, lumbar degenerative disc disease, adjustment disorder, diabetes mellitus, and congestive heart failure.  He further found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR, Part 404, Subpart P, Appendix 1.  Next, the ALJ assigned residual functional capacity as follows:

> "The claimant has the residual functional capacity to perform light work except that she must be able to alternate from sitting to standing at her own discretion.  She cannot climb ladders, ropes or scaffolds.  She cannot crouch or crawl.  She can stoop, kneel, reach overhead, and climb

---

[1] In this Report and Recommendation, plaintiff will be referred to as plaintiff, claimant, or Mrs. Waldbrunn.  During the course of treatment described here, Mrs. Waldbrunn married and obtained her present name, explaining why a different surname appears in a substantial number of medical records.

> stairs/ramps no more than occasionally. She can understand, remember and carry out simple but not complex instructions."

T. 21.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce pain and other symptoms. Nevertheless, the ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms not persuasive "in light of office notes from treating sources, reports from consulting sources, activities of daily living, and the treatment actually sought and received." T. 22. The ALJ noted admitted activities including driving a car, shopping, needle work, internet research, and visits to plaintiff's father.

The ALJ directly considered complaints of back pain. T. 22. He credited these complaints to the extent of reducing plaintiff's residual functional capacity from "the very heavy level to the light level." He found, however, the greater degree of limitation alleged by Mrs. Waldbrunn excessive by comparison to the objective medical evidence and history of treatment. The ALJ noted that Dr. Timmons had approved a range of light work.[2] As observed by the ALJ, no other physician had assigned any greater limitation. The ALJ acknowledged plaintiff's "serious problems," but did not believe that these would obliterate her residual functional capacity to do light work.

Approaching the end of his analysis, the ALJ concluded that Mrs. Waldbrunn had limitations that would preclude the full range of light work. T. 23. He nevertheless found, based largely on the vocational testimony, that plaintiff could

---

[2] The exhibit referred to by the ALJ for this fact appears to be Dr. Timmons' approval of Mrs. Waldbrunn's return to work as a charge nurse. T. 303.

make a successful adjustment to other work that exists in significant numbers in the national economy, and made the ultimate finding of "not disabled." The Appeals Council has declined review.

## STANDARD OF REVIEW

"Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards." *Olds v. Astrue*, No. 5:09cv319/RS/EMT, 2011 WL 691595, at *1 (N.D. Fla. Jan. 19, 2011); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary[.]" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot,

considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(1)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *See* 20 C.F.R. § 404.1512. "If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Olds*, 2011 WL 691595, at *2. "If the

Commissioner carries this burden, the claimant must then prove [she] cannot perform the work suggested by the Commissioner." *Id.*

## CLAIMANT'S MEDICAL HISTORY

Having obtained her RN in 1983, plaintiff Christine Waldbrunn was employed in her field when she suffered a work-related back injury in February of 2003. After this injury, plaintiff sought treatment from Dr. Ramon Ryan, at Baptist Medical Park in Pensacola. T. 294. By February 10, 2003, plaintiff had back spasms, was mildly tender to palpation in the mid to upper lumbar region, and had decreased range of motion, mainly out of fear of inducing a back spasm. *Id*. Dr. Ryan imposed initial restrictions, including no lifting, transferring, or direct physical support of patients. *Id.* These symptoms and restrictions continued until March 3, 2003, when Dr. Ramon ordered a lumbar MRI (magnetic resonance imaging).

The resulting MRI showed "early degenerative disc disease at L5-S1" and "mild disc bulging," but "no evidence for . . .neural foramina stenosis" and "no disc herniation. T. 295. After reviewing the MRI report and further examining Mrs. Waldbrunn, Dr. Ryan continued the same restrictions and referred her to pain management "for evaluation and consideration of injection perhaps to the SI (sacroiliac) joint." T. 291.

Pursuant to this referral, plaintiff came under the pain management care of Dr. Ruben Timmons. Dr. Timmons' care continued from March 24, 2003, through December 15, 2005. T. 114-152. Dr. Timmons diagnosed lumbar strain, lumbar facet arthropathy, and right sacroiliitis. He noted ongoing pain, rated at 5-6 on a scale of

10, increased with sitting or prolonged standing.[3] T. 151-152. Upon specific testing, Dr. Timmons found no paresthesias.[4] He found no sensory deficits to light touch or pinprick. T. 152. Straight leg raises were mildly positive on the right. *Id.* Based upon continuing pain, Dr. Timmons believed that facet and sacroiliac joint injection on the right might prove beneficial. He continued Mrs. Waldbrunn on light duty work restriction. *Id.* Plaintiff had the indicated injections on April 29, 2003. T. 149-50. Dr. Timmons performed a second series of injections on May 29, 2003. T. 145. At a follow-up in the office, Dr. Timmons noted "good symptomatic relief." T. 144.

Noting plaintiff's continued reports of low back pain, Dr. Timmons referred her for radio frequency thermal coagulation (rhizotomy)[5] in September 2003. T. 141. This procedure took place under fluoroscopic guidance on October 2, 2003, for the right side, and on October 24 on the left. T. 138. At the next office visit in November, Dr. Timmons felt plaintiff would be unable to return to medium duty work. He anticipated maximum medical improvement in six weeks with a 5% whole

---

[3] When seen by Dr. Steve Hirschorn, Ph.D., a clinical psychologist, in January 2007, plaintiff also reported pain at 6, increasing to 10+ "when she is on her feet." T. 208.

[4] "Paresthesia refers to a burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body. The sensation, which happens without warning, is usually painless and described as tingling or numbness, skin crawling, or itching." National Institute of Neurological Disorders and Stroke, Paresthesia Information Page http://www.ninds.nih.gov/disorders/paresthesia/paresthesia.htm (visited 08/08/2011). "Chronic paresthesia is often a symptom of an underlying neurological disease or traumatic nerve damage." *Id.*

[5] This procedure is defined as the "interruption of a cranial or spinal nerve root, such as by chemicals or radio waves." *Dorland's Pocket Medical Dictionary* 750 (27th ed. 2004); *See also* WebMD, Back Pain Health Center, http://www.webmd.com/back-pain/guide/understanding-back-pain-treatment (visited 08/08/2011) (Characterizing the process as delivering electrical stimulation to specific nerves to make them less sensitive to pain, or the delivery of a sufficient charge to actually destroy the nerve to prevent further pain.)

person impairment. T. 134. At the next office visit, January 7, 2004, Dr. Timmons noted maximum medical improvement as he had anticipated. He felt Mrs. Waldbrunn would not be a candidate for further injections for at least six months. T. 133. By April 2004, plaintiff had "stabilized or plateaued" with pain control. T. 132. Conservative management was indicated. *Id.*

In August 2005, Dr. Timmons performed another series of facet and sacroiliac joint injections. T. 118-126. Dr. Timmons noted slow return of pain, and planned conservative management with Tramadol 50mg for pain as needed. T. 114-116. Dr. Timmons last saw Mrs. Waldbrunn on December 15, 2005.

Beginning in March 2006, Mrs. Waldbrunn obtained care from Dr. Sam Greenlee of Pace Blvd. Family Practice in Pensacola. Dr. Greenlee treated Mrs. Waldbrunn primarily for chronic and acute medical conditions, and also continued conservative management of the back, prescribing Lortab and Ultram. T. 249, 252. Dr. Greenlee advised Mrs. Waldbrunn to discontinue smoking, to exercise, and to lose weight. T. 241, 244, 249. A lumbar MRI, ordered by Dr. Greenlee in October 2006, showed only minimal discogenic changes at L5-S1, mild arthritic changes, and no compressive protrusions or encroaching osteophytes . T. 19, 259. At the last visit to Dr. Greenlee, July 31, 2009, the chart notes the doctor had prescribed Cymbalta, which "is helping." T. 318.[6]

On referral from Dr. Greenlee, plaintiff saw pain management specialist, Dr. Jeffrey Buchalter, first in 2007, and then from August 2008 until at least June 2009.[7]

---

[6] The Appeals Council admitted records from Drs. Greenlee and Buchalter, generated after the ALJ hearing. T. 314-43.

[7] Although synopsized here for completeness, the Appeals Council ultimately declined to consider Dr. Buchalter's chart because this information concerned a later time. T. 8. Plaintiff

T. 337-43. Dr. Buchalter's records are the most current in the file, having been filed by counsel after the ALJ hearing and before the Appeals Council decision. In March and April of 2009, Dr. Buchalter performed facet joint injections and facet joint arthrograms.

At the time of the most recent visit documented in the record, Dr. Buchalter noted a history of severe bilateral neuropathy, with bilateral back and leg pain. No relief had been provided by "an extensive course of treatment" including injective therapy and multiple medications. Physical examination revealed decreased range of motion in the lumbar spine with bilateral paraspinal spasm. Mrs. Waldbrunn had antalgic gait. The final assessment included bilateral peripheral neuropathy, degenerative disc disease at L5-S1, and diabetic neuropathy. In the plan for treatment, Dr. Buchalter suggested spinal cord stimulation because the patient had failed to respond to conservative as well as interventional-based pain management protocol. Although the medical record ends at June 9, 2009, the last chart makes clear that further procedures and treatment probably lie in the future for plaintiff. T. 337.

At the request of Florida Disability Determinations, Dr. Tom Kersch, an internist with Med-Plus Florida, did a consult examination in May 2006. T. 153-154. Mrs. Waldbrunn reported last working in December 2005 as a supervisor in a long-term care facility. She claimed no specific limitation with dressing or feeding herself. She could stand for 15 minutes, walk a block, lift 20 pounds, drive a car for up to 20

---

has not appealed this conclusion. *See Leiter v. Comm'r of Soc. Sec.*, 377 F. App'x 944, 950 (11th Cir. 2010) ("Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefits in a new application, but it is not probative of whether a person was disabled during the specific period under review.").

minutes, and perform household duties such as sweeping, mopping, shopping, climbing and descending stairs, cooking and doing dishes. She could not vacuum or cut the grass.

Physical examination revealed no apparent distress. The patient was able to squat down and come back up with support of the exam table. She had 5/5 grip strength in both hands, and negative straight leg raising both sitting and supine. Relevant to this disability claim, Dr. Kersch recorded a normal neurologic exam, and diagnosed "mechanical low back pain without radicular symptoms." T. 154.

On January 30, 2007, plaintiff was examined by Dr. Suzanne K. Zoss, a licensed psychologist. T. 217. As a result of her physical limitations, Mrs. Waldbrunn suffers from depression and has lost her ability to concentrate. T. 229. Dr. Suzanne K. Zoss diagnosed Mrs. Waldbrunn with Adjustment Disorder with Depressed Mood as a secondary consequence of her physical limitations. T. 220, 229. In Dr. Zoss's opinion, "it is possible that her pain medication adversely affects her CPP; and pain itself may interfere at times." T. 229.

## HEARING BEFORE THE ALJ

Mrs. Waldbrunn, of course, testified before the ALJ at her hearing on September 12, 2008. T. 346-65. After her injury, she worked for a time within her restrictions, but was terminated in December 2005. At the time of the hearing, plaintiff was in the midst of pain management treatment from Dr. Buchalter. She noted things had "decreased" in terms of what she was able to do. She used the sink rather than the shower because of falls in the bathtub when her leg gave out. She could not engage in activities she once enjoyed such as bowling, golf, and playing

with her dogs.  She was able to drive two-and-a-half miles to Wal-Mart.  Although she is able to make sandwiches for herself and her husband, she is in pain after that activity.

Mrs. Waldbrunn has had diabetes since age three and now takes medication for that.  The medications seem to "do good."  In her last job, she was classified as a supervisor, but still had to provide med carts and do treatments which involved bending over beds and rolling patients.  She loved being a nurse and had worked in her profession for some 22 years.

A vocational expert, Gail Jarrell, also appeared at the administrative hearing.  Jarrell classified plaintiff's last position as general duty nurse, which is skilled, medium duty.  T. 368.  The ALJ asked several hypothetical questions of the expert.  In the first question, the ALJ posited an employee with claimant's limitations and also limited by medication side effects, pain, and an adjustment disorder such as claimant's.  Jarrell said such a person could work as a general office clerk, which is light, unskilled work.  Such a person could also work as a security guard, another light, unskilled position.  T. 370.

In the second hypothetical, the ALJ added that the prospective employee would miss at least one day a week due to physical limitations and pain.  Such an absentee rate would, according to Jarrell, rule out the jobs she had just identified.  T. 372.  An absentee rate of 20% would render an unskilled worker "unemployable."  *Id.*

In the third hypothetical, the ALJ assumed the employee had an adjustment disorder that would cause two daily emotional episodes causing absence from the

workstation for 30 minute periods at unpredicted times. Such a person would not be able to do the unskilled jobs Jarrell had previously identified. T. 373.

## ANALYSIS

Plaintiff argues that the ALJ committed error by failing to properly evaluate her pain and her other subjective symptoms. She urges that the so-called three-part pain test applied by the Eleventh Circuit requires reversal. Although the heading of her argument contends the ALJ misconstrued "other subjective symptoms," the actual argument in the memorandum is limited to a discussion of pain as the determinative indicia of disability.

The Commissioner responds that the ALJ properly evaluated complaints of pain in light of other facts of record and plaintiff's credibility. The Commissioner thus concludes that the ALJ properly determined that plaintiff retained the residual functional capacity to perform other work, specifically the range of light work explained in the decision.

Under well-established controlling law, pain is treated, for purposes of the disability analysis, as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[8] test, as follows:

---

[8] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *Adamo v. Comm'r of Soc. Sec.,* 365 F. App'x 209, 214 (11th Cir. 2010) (quoting *Wilson*, 284 F.3d at 1225); *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson,* 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1259 (M.D. Fla. 2005). The presence or absence of evidence to support symptoms of the severity claimed, though, remains a factor that can be

considered. *Marbury*, 957 F.2d at 839-40; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain, he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt*, 921 F.2d at 1223; *MacGregor*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Id.* (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-26; *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F. Supp. 2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and

complaints").[9]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985).  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984).  Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

In arguing misapplication of the pain standard, plaintiff relies largely upon *Cronon v. Barnhart*, 244 F. Supp. 2d 1286 (N. D. Ala. 2003).  She characterizes *Cronon* as an analogous case, to which this court might look for guidance.  In that case, the District Court reversed and remanded with instructions to award benefits, finding abundant clinical and objective evidence to establish the credibility of the complaints of pain advanced by the claimant.  *See id.* at 1291-1292.  The Commissioner does not directly confront the *Cronon* decision, but, instead points to

---

[9] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981, are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

a series of facts of record that support the ALJ's determination as to the degree of pain—essentially a credibility determination—and also support the conclusion as to residual functional capacity.

    I have carefully reviewed the evidence cited by the Commissioner. I have also considered plaintiff's complaints of pain and limitation—complaints the ALJ did not find entirely without substance. I am unable to discount the facts relied upon by the Commissioner, all of which are supported by the evidence before the ALJ. Moreover, this court has declined to follow *Cronon* as persuasive authority. *See Whaley v. Astrue*, No. 3:08cv126/MCR/MD, 2009 WL 700789 (N.D. Fla. Mar. 16, 2009). In *Whaley* the court observed that the Northern District of Alabama reversed because the ALJ erroneously found that there were no objective findings to support complaints of pain. *See id.* at *8. In the present matter the ALJ did not mischaracterize the objective findings. In fact, he specifically relied upon the records provided by treating and examining physicians to determine the degree of pain endured by plaintiff and the range of activities she could perform.

    Mrs. Waldbrunn does have objective findings. As verified by MRI, she has minimal disc changes at one level with mild arthritic changes at several facet joints. The doctors treated these problems with medication and, on occasion, pain management by injection. The ALJ referred to the findings of the 2006 MRI of the lumbar spine. Although not specifically mentioned by the ALJ, this study was quite consistent with the 2003 MRI, both tests demonstrating mild or minimal changes at the only diagnosed problem area, that being L5-S1.

The ALJ also considered Plaintiff's activities of daily living, and found them to be inconsistent with her alleged degree of limitation. T. 19, 20-22. Plaintiff reported to two consulting physicians that she was able to drive short distances, and perform such tasks as sweeping, mopping, shopping, going up and down stairs, cooking, and dishwashing. T. 153, 212. Plaintiff also read, researched on the internet, crocheted, and visited with her father. T. 20, 22, 101, 210. The ALJ may consider such daily activities when evaluating subjective complaints of disabling pain and other symptoms. *See Wilson*, 284 F.3d at 1226; *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3). In addition, Dr. Timmons, perhaps the specialist who had most contact with Mrs. Waldbrunn, confirmed her ability to work at light duty. Although the ALJ did not find Mrs. Waldbrunn to be a completely unreliable witness, and did credit many of her "subjective allegations," T. 22, he properly noted the objective medical evidence, the largely conservative history of treatment over five years, and those activities of daily living still within Mrs. Waldbrunn's ability.

The findings of the ALJ, properly supported by substantial evidence, are consistent with the assigned residual functional capacity of a range of "light work." The Commissioner's regulations define "light work" in part:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do

> sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  Here the ALJ accounted for Mrs. Waldbrunn's non-exertional limitations by way of hypothetical questions posed to the vocational expert. *See* 20 C.F.R. § 404.1569a.  Accordingly, the decision is in compliance with appropriate legal standards.  *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Upon the foregoing, it is respectfully RECOMMENDED:

The application for a period of disability and disability benefits be DENIED and the Commissioner's decision be AFFIRMED.

At Pensacola, Florida, this 18th day of August, 2011.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).